IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| THOMAS BRYANT<br>on behalf of himself individually,<br>and ALL OTHERS SIMILARLY<br>SITUATED<br><br>　　　Plaintiff,<br><br>v.<br><br>ADEX CORPORATION<br>　　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.  1:18-cv-01282<br><br><br>COLLECTIVE ACTION UNDER<br>29 U.S.C. §216(b) |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT**

Plaintiff Thomas Bryant, on behalf of himself and on behalf of all others similarly situated, ("Plaintiff") and Defendant Adex Corporation ("Defendant") file this Joint Motion for Approval of Settlement and would respectfully show the Court the following:

**I.      INTRODUCTION**

Plaintiff and Defendant have reached a settlement of the pending dispute concerning unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.* ("FLSA").  The settlement provides 28 current and former employees who were alleged to have been under paid their overtime wages a settlement for this possible wage and hour claim.  Attached hereto as Exhibit "1" is a copy of the Parties' settlement agreement. (*See* Exhibit "1.")

On February 13, 2018, Plaintiff Thomas Bryant filed this collective action lawsuit. (*See* Doc. 1.)  The central allegation was that Defendant issued wage payments to the Plaintiff and Class Members that were disguised as expense reimbursements.  In particular, the Plaintiff and Class Members were paid on an hourly basis with overtime pay when they worked more than 40 hours in a week.  However, the Plaintiff argued that certain expense reimbursements were actually wage

1

payments that should have been included in the overtime rate calculation. Given that those payments were excluded, the overtime rate was lower than what it should have been.

On October 10, 2018, this Court granted Conditional Certification of the following class: Defendant's "Field Technicians" who worked on cellular tower networks, were paid "per diem" payments during at least one week of their employment, were ever paid overtime for working more than 40 hours during a calendar week, and worked for Defendant at any time from February 14, 2015 to February 14, 2018. (Doc. 24 and Doc. 25). The settlement at issue resolves the claims of the Plaintiff and 27 Opt-In Plaintiffs.

During the discovery period, the Parties engaged in detailed written discovery and held several conferences to discuss the merits of the case. The Parties jointly reviewed pay records, time records, and expense reimbursement records for the Plaintiffs. The Parties also evaluated the per diem rates for federal employees and compared those federal reimbursement rates to the weekly expense reimbursement payments issued by Defendant. Using these records, the Parties calculated the damages they believed could be available to the Class Members.

During discovery, the Parties attended private mediation with Neal Brickman, a mediator with extensive experience in employment litigation. During mediation, the Parties discussed the potential damages for the Plaintiff and Class Members, the applicable statute of limitations, and the merits of the case. Through the efforts of Mr. Brickman, the Parties were able to reach a settlement. The final terms of the settlement are reflected in the attached Exhibit "1."

## II.     ARGUMENTS AND AUTHORITIES

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for unpaid overtime wages brought pursuant to the FLSA, which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.* "Courts therefore have refused to enforce wholly private settlements." *Id.,* citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).

Instead, most courts recognize only two valid ways by which an individual can release or settle a FLSA claim: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c); or (2) a court-approved stipulation of settlement. *Lynn's Food Stores,* 679 F.2d at 1353; *Jarrard v. Southeastern Shipbuilding Corp.,* 163 F.2d 960 (5th Cir. 1947) (enforcing a state court stipulated judgment entered upon disputed issues of both law and fact as *res judicata* to bar a federal FLSA suit). Settlements in the context of litigation, where there are bona fide issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute" are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation." *Lynn Food*, 679 F.2d at 1354.

When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food*, 679 F.2d at 1353, 1355. The endorsement of a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella*

*v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008).

The Parties agree that the settlement is fair and represents a reasonable compromise of the disputed issues in this case.

> A. **The terms of the settlement provide for substantial compensation for the claims raised in the lawsuit.**

The Parties' settlement is fair and reasonable and provides fair compensation to the Plaintiff and Class Members. The damages that were calculated were based upon the actual records for each Plaintiff and Class Member identifying four expense reimbursement payments to them: (1) an "expense reimbursement," (2) a "non billable" payment, (3) a "per diem," and (4) a "truck & tools" payment.

To calculate potential damages, there is a two part test to determine whether an expense reimbursement constitutes wages that must be included in the regular rate of pay. First, the determination must be made as to whether the payment is primarily for the **<u>benefit or convenience</u>** of the employee versus the employer. If the expense payment is primarily for the "benefit or convenience" of the employee, then the payment constitutes wages as a matter of law.

Section 778.217(d) states as follows:

> The expenses for which reimbursement is made must, in order to merit exclusion from the regular rate under this section, be expenses incurred by the employee on the employer's behalf or for his benefit or convenience. **If the employer reimburses the employee for expenses normally incurred by the employee for his own benefit, he is, of course, increasing the employee's regular rate thereby**. An employee normally incurs expenses in traveling to and from work, buying lunch, paying rent, and the like. **If the employer reimburses him for these normal everyday expenses, the payment is not excluded from the regular rate as "reimbursement for expenses."** Whether the employer "reimburses" the employee for such expenses or furnishes the facilities (such as free lunches or free housing), the amount paid to the employee (or the reasonable cost to the employer or fair value where facilities are furnished) enters into the regular rate of pay as discussed in § 778.116.

*Id* at § 778.217(d) (emphasis added).

4

If the expense payment is primarily for the "benefit or convenience" of the employer, then the analysis shifts to the second step: whether the amount paid by the employer to the employee was reasonable. This part of the test requires an examination into the reasonableness of the amount of the reimbursement. Any amount in excess of the actual or reasonably approximate amount of the expense will be included in the regular rate, and due to this inclusion, will be multiplied by one and one half to derive the appropriate amount of overtime. *See* Wage and Hour Division Opinion Letter, March 10, 1993, *available at* 1993 WL 901152. These payments must be included in the regular rate because not doing so "would allow employers to 'evade the overtime requirements with ease.'" *Reich v. Interstate Brands, Corp.*, 57 F.3d 574, 577 (7th Cir. 1995).

Here, each Plaintiff's actual pay, time, and expense records were reviewed and an estimated amount owed for each Plaintiff was calculated. The total amount of the four expense payments were added each week and then divided by the total number of hours worked each week to determine the overtime rate on the expense reimbursement payments. That rate was then multiplied by 0.5 to determine the additional half-time premium owed under the law. That premium was then multiplied by the number of overtime hours worked each week by the Plaintiff and Class Members to determine the amount owed each week. The total amount owed for each individual was then added together to determine the amount owed for the Class.

The settlement is fair and reasonable because the settlement amount is greater than the amount owed on the standard two year statute of limitations under the FLSA. On the standard two year period, Plaintiff calculated the unpaid overtime wages to be $78,374.04. However, Defendant argued that several the per diem payment issued by Defendant was nearly identical to the amount established for the federal reimbursement rate. Further, Defendant argued that the payment titled "non-billable" payment was an overtime premium issued to the Plaintiff and Class Members.

When removing the per diem payment, Plaintiff's damage model is reduced to approximately $45,000.00. If the Court were to treat the "non-billable" payment as an overtime premium, as Defendant argued, then the Plaintiffs would be owed zero. Thus, the settlement provides an amount that is more than the back wages due under the FLSA.

The recovery reached in the Settlement Agreement is also significant given that the Parties strongly disagreed over the merits of the case. The Plaintiff argued that each of the expense payments should be included in the regular rate of pay because they were reasonable related to any actual expenses. Defendant countered that most of the payments were nearly identical to the federal expense reimbursement rates. Further, Defendant argued that it actually paid more overtime wages than what is due under the FLSA. Moreover, the Parties disagreed as to whether the Plaintiff could satisfy his burden to demonstrate that Defendant acted willfully, which in turn affects whether Plaintiff could recover damages for two (2) years or three (3) years prior to the filing of the Complaint. *See* 29 U.S.C. § 255. The Parties also disagreed as to whether Defendant could satisfy its burden of proving good faith and reasonableness and, consequently, the extent to which liquidated damages could be awarded in the case.

Due to the directly conflicting factual allegations and differing views on the applicable law, the Parties believe that the amounts reflected in the Settlement Agreement are in the best interest of the Class Members. In particular, each Plaintiff and Class Member will be entitled to a gross recovery from the settlement that is greater than the back wages under a two year limitations period.

More importantly, the settlement allows the Parties to resolve the claims at issue without the necessity or delay of trial and possible appeals. In exchange for these payments, the Class Members will agree to release Defendants from the wage claims that they asserted in the lawsuit.

**B.    The settlement is fair and reasonable in light of the uncertainty of the outcome.**

The proposed Settlement Agreement is fair to the Plaintiff and Class Members because it provides for a settlement for the Plaintiff and Class Members with damages calculated based upon the actual records for the Class, which each Class Member allocated a separate amount based upon his/her dates of employment, hours worked, expense payments, and total pay.

The settlement allows each Class Member to receive an amount from the settlement fund that is based upon each individual's proportionate share of the total damages available to all Class Members in the aggregate, net of attorneys' fees and costs.  That is, hypothetically, if a Class Member is owed $2,000 and the total settlement amount is $100,000, his proportionate share of the settlement is two percent (2%) and he will receive that percentage of the settlement proceeds after fees and costs have been deducted. The pro rata allocation to each Class Member is set forth in the Settlement Agreement.

As part of the settlement, the Parties agreed to a Class Representative Award for Thomas Bryant.  Otherwise known as a "service payment," this amount is in addition to his pro rata settlement share.  Mr. Bryant is also executing a broader release of claims than the Opt-In Plaintiffs.  Plaintiff asks that the Court approve the service payment in light of the release he provided, his efforts to the case which resulted in a settlement on behalf of the Class Members, the valuable contributions he made throughout the litigation, particularly in its initial phases, and the significant risk to his reputation and future employment.  In light of the foregoing, Plaintiff submits that the service award is reasonable.

**C.    The Parties have agreed on a fair and reasonable notice plan to administer the settlement.**

The Parties have agreed to self-administer this settlement.  Defendant will mail within 14 days of approval of the settlement, the individual settlement checks to the Class Members.  That

7

is all Class Members will receive a payment from this settlement. The release of claims to be executed by the Class Members is a limited release of wage and hour claims asserted in the lawsuit, and not a broad release of all imaginable claims. This release will be identified on the back of the settlement checks. Depositing the settlement checks with the release on the back will constitute effective release of the claims. *See, e.g., Fontenot v. Saybolt*, No. Civ. A. 4:15-cv-02113 (S.D. Tex. 2016).

In *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013), the court approved final settlement of a FLSA wage action with a similar process for releasing FLSA claims through check cashing:

> Under the Settlement Agreement, the Named Plaintiffs, the FLSA Class Members who cash their settlement checks, and the California Class Members release all claims against Pro Unlimited and Juniper that were alleged in this case or that reasonably arise out of the facts alleged in the case.

*Id.* at *3. Likewise in, *Franco v. Ruiz Food Products, Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *24 (E.D. Cal. Nov. 27, 2012), the court approved a settlement of a hybrid class and collective claim where class members opted in and released FLSA claims by endorsing settlement checks with the following language on the backside: "By endorsing this check, I consent to join the Class in Franco, et. al. v. Ruiz Food Products, Inc., elect to participate in the Settlement, and agree to release all of my claims that are covered by the Settlement." *Id.* The agreement further provided that, "Class Members must only cash one Settlement Award check to opt-in to the Class." *Id.* Lastly, the court made it clear it was approving a settlement agreement that provided, "waivers of claims expressly under the FLSA shall only be binding on Settlement Class members who opted-in as provided above." *Id*. at *25.

Other courts likewise have approved this procedure of opting in and releasing FLSA claims. *See, e.g., Seghroughni v. Advantus Rest., Inc.*, No. 8:12-CV-2000-T-23TBM, 2015 WL

390329, at *1 n.* (M.D. Fla. Jan. 28, 2015) ("By endorsing his or her settlement check, each FLSA Class Member shall release Defendants from all FLSA claims, as well as state wage and hour claims, that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation, through the date on which the Court grants preliminary approval of the settlement."); *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 CIV. 2541 KNF, 2014 WL 1378922, at *2 (S.D.N.Y. Mar. 25, 2014) ("[T]he FLSA class members are defined as delivery workers employed by the defendants between April 16, 2010, and August 21, 2013, and who endorse their settlement checks or have filed a consent to join the lawsuit."); *Lizondro-Garcia v. Kefi LLC*, No. 12 CIV. 1906 HBP, 2014 WL 4996248, at *2 (S.D.N.Y. Oct. 7, 2014) ("Defendants will not be released from the FLSA claims of FLSA collective members who do not endorse their settlement checks.").

There will be no reversion to the Defendant. Each Plaintiff who joined this case will receive a settlement payment. This process is fair and equitable to all Parties and eliminates the need for a separate claim form.

### D.    The attorneys' fees sought are fair and reasonable.

Additionally, the amount for attorneys' fees are fair and reasonable. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Plaintiff's Counsel investigated the claims, engaged in significant discovery, analyzed pay data, managed communication with all Class Members, and performed other work that resulted in a settlement.

When evaluating a claim for fees, **a party's success in the litigation is the "most critical."** *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). In determining the reasonableness of the

9

requested attorney's fee, the court in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) considered the comparative data about Rule 23 class settlements summarized by the National Economic Research Associates. The NERA Study relied upon by the *Shaw* Court showed that the average result achieved for class members was only **7% to 11% of claimed damages**. Measured against that standard, the settlement in this case is exemplary. Under Plaintiff's theory of the case, Plaintiff's Counsel have successfully prevailed. They acquired a class settlement that provides substantial recovery for each Class Member. Under Defendant's theory, the Class Members would be owed close to zero.

The average recovery to each Class Member is also significant; it is greater than recoveries in other wage-and-hour settlements. *See Bower v. Cycle Gear, Inc*, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (reasoning that "the results obtained for the Class Members were very favorable" where the average recovery was $183.70); *Adoma v. Univ. of Phoenix, Inc*., 913 F. Supp. 2d 964, 982 (E.D. Cal. 2012) (reasoning that average recovery of over $2,000 per Plaintiff was a "favorable" result). Again, under Plaintiffs' theory of the case, Plaintiffs' Counsel has more than successfully prevailed.

Plaintiff's Counsel have acquired a class settlement that provides for a reasonable estimate of damages given the facts of the case and the relative merits of Plaintiff's claims and Defendant's possible defenses. Under Defendant's theory, the Plaintiffs could be owed zero. Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiffs even had a viable claim. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damages awards available to the

Class Members in this case. Thus, the work of Plaintiff's Counsel provided a significant benefit to the Class Members.

Plaintiffs' Counsel is seeking a modest 27.5% fee interest. The amount sought is less than Plaintiff's Counsel's lodestar. Indeed, it is less than half Plaintiffs' Counsel's lodestar. It is important to note that had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded. Therefore, the Class Members were at great risk of non-payment. This risk of non-payment strongly supports the amount requested here.

### E. The settlement should be approved by the Court.

The terms of the settlement have been approved by Plaintiff Bryant, his counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (*citing Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. 2004)). Moreover, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the settlement, the Parties engaged in extensive negotiations concerning the specific terms of the settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard fought negotiations.

Ultimately, there can be no question that this Settlement Agreement represents fair value for the Class Members.  Each Class Member will receive back wages and liquidated damages under federal law without the risk or expense of trial. Indeed, the amounts recovered under the settlement are fair on both a collective and individual basis.

### III.   CONCLUSION

The terms of the settlement have been approved by Plaintiff, his counsel, Defendant, and Defendant's counsel.  The settlement was negotiated at arms' length.  The Parties entered into the Settlement Agreement voluntarily and knowingly.  The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit. Accordingly, Plaintiff requests that the Court approve the FLSA settlement.

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order approving the Parties' Settlement Agreement. A proposed order is attached for the Court's consideration.

RESPECTFULLY SUBMITTED

Respectfully submitted,

/s/  Don J. Foty
Don J Foty
(admitted pro hac vice)
dfoty@kennegyhodges.com
Texas Bar No. 24050022
4409 Montrose Blvd., Suite 200
Houston, Texas 77006
(713) 523-0001

/s/ Thomas Chase
Thomas E. Chase
369 Lexington Avenue, 15th Floor
New York, NY 10017
Telephone: (212)-661-3080
Facsimile: (212)-867-1914
Email: tchase@rlrpclaw.com

(713) 523-1116                                    ATTORNEYS FOR DEFENDANT

ATTORNEY FOR PLAINTIFF AND
CLASS MEMBERS

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of this document has been forwarded to Defendant pursuant to the Federal Rules of Civil Procedure on this the September 6, 2019:

                                             */s/ Don Foty*
                                             Don Foty